**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

Oct 10 2013, 5:37 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JILL M. ACKLIN**
Acklin Law Office, LLC
Westfield, Indiana

ATTORNEYS FOR APPELLEE:

**ROBERT J. HENKE**
DCS Central Administration

**PATRICK M. RHODES**
Indiana Department of Child Services
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN RE THE INVOLUNTARY TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF R.C. and M.C.: | ) ) ) ) |
| Ro.C. (Father) | ) ) |
| Appellant-Respondent, | ) ) |
| vs. | ) ) No. 49A02-1303-JT-194 |
| THE INDIANA DEPARTMENT OF CHILD SERVICES, | ) ) ) |
| Appellee-Petitioner. | ) ) ) |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Marilyn Moores, Judge
The Honorable Larry Bradley, Magistrate
Cause No. 49D09-1209-JT-37595
Cause No. 49D09-1209-JT-37596

**October 10, 2013**

**FRIEDLANDER, Judge**

R.C. (Father) appeals the involuntary termination of his parental rights to Ro.C. and M.C. (collectively, the Children) and argues that his trial counsel's allegedly deficient performance entitles him to a new trial.

We affirm.

Re.C. (Mother) gave birth to Ro.C. on June 7, 2010 and M.C. on August 6, 2011.[1] Father is the alleged father of the Children. At the time of her birth, M.C. tested positive for opiates. On September 12, 2011, the Marion County Department of Child Services (DCS) filed a petition alleging that the Children were children in need of services (CHINS). The petition alleged that M.C. had tested positive for opiates at birth and Mother had admitted to a history of substance abuse, including regular drug use throughout her pregnancy. The petition also alleged that Father had a history of drug use and that Mother's older child, A.D., had witnessed drug use and domestic violence in the home.[2] The petition further alleged that Father had physically abused A.D. on multiple occasions and that Ro.C. had special needs that were not being met by the parents. On the same day, the juvenile court held an initial hearing at which Father appeared and counsel was appointed for him. At the hearing, the court ordered the Children placed in Mother's care on a temporary trial in-home visit,

---

[1] The juvenile court also terminated Mother's parental rights. Mother does not participate in this appeal.
[2] The petition also alleged that A.D. was a CHINS. A.D. is not a subject of this appeal.

contingent upon Mother's participation in services. The court also authorized Father to have supervised parenting time.

Over the next year, there were more than ten hearings in the CHINS proceedings, but Father rarely appeared. At a hearing on November 7, 2011, at which Father failed to appear, the juvenile court ordered the Children removed from Mother's care and authorized placement in foster care or relative care. At a hearing held on February 9, 2012, at which Father again failed to appear, Father's attorney waived Father's right to a fact-finding hearing and the juvenile court adjudicated the Children CHINS based on Mother's admissions. On March 22, 2012, Father again failed to appear and the juvenile court entered a parental participation order requiring Father to establish paternity. Because paternity had not yet been established, Father was not ordered to complete any additional services at that time. Nevertheless, Family Case Manager (FCM) Marie Skelton provided Father with referrals for home-based services, domestic violence education, substance abuse counseling, and random drug screens. Aside from briefly participating in home-based services and completing a few drug screens (some of which tested positive for the presence of drugs), Father failed to follow through with services, telling FCM Skelton that "it was just too much." *Transcript* at 71. Although Father initially participated in supervised visitation, his attendance became inconsistent and, as a result, visitation was suspended. Additionally, throughout the CHINS

3

proceedings, Father lacked stable housing and was only sporadically employed. Father also failed to establish paternity as ordered.[3]

On September 20, 2012, the juvenile court conducted a review hearing at which the Children's permanency plan was changed from reunification to adoption because, among other things, Father had failed to establish paternity. On September 25, 2012, the DCS filed a petition to terminate Mother's and Father's parental rights. Father failed to appear at the initial TPR hearing on October 12, 2012, and the hearing was continued until October 19, 2012. Father appeared at the October 19 hearing, and the juvenile court appointed counsel for him. Father appeared with counsel at the evidentiary hearing on the TPR petition on January 28, 2013. At the conclusion of the evidence, the trial court took the matter under advisement. On February 4, 2013, the juvenile court entered its order terminating Mother's and Father's parental rights. The juvenile court entered the following relevant findings and conclusions:

> 10. Paternity had not been established and no services were ordered for [Father] except that he was first to establish paternity. The Court takes judicial notice of *In re M.R. v. State Department of Child Services*, 934 N.E.2d 1253 (Ind. Ct. App. 2010), holding that without first establishing paternity to determine an alleged father is indeed a "parent" under [the] statutory definition, the court is without authority to enter a parental participation decree.
>
> * * *
>
> 20. [Father] has not established paternity o[f] the children although ordered to do so in March of 2012. Testimony was that he was waiting for someone to

---

[3] At the termination hearing, Father claimed to have established his paternity to Ro.C., but provided no evidence to support his assertion. Additionally, Father attempted to stipulate to his paternity of the Children, but it is beyond dispute that paternity may not be established in this manner. *See In re M.R.*, 934 N.E.2d 1253, 1255 (Ind. Ct. App. 2010) (holding that "[t]he exclusive means to establish a man's paternity is through an action filed pursuant to the paternity statute or by executing a paternity affidavit"). The juvenile court found that Father had not established paternity.

4

call him. He had met with Mr. Thompson, who facilitates the process, early in the case.

21. Although not ordered, the [DCS] referred services of domestic violence education, urine screens and home based case management for [Father]. He participated in home based services for a short period of time.

22. The C[H]INS Court found at its June 28, 2012 Review Hearing that [Father] had visited the children inconsistently, refused to participate in services and openly admits to continued use of marijuana and vicodin. Based on that finding and [Mother's] non-participation, the Court scheduled the next hearing as a Permanency Hearing at which time it was found to be in the children's best interests that the permanency plan be changed to adoption.

23. If paternity was established, [Father] would need to complete domestic violence education.

24. If paternity was established, [Father] would need to complete a substance abuse program. He started using marijuana when he was age twelve. He reported he last used one and one-half months before the trial in this matter. He also admitted taking non-prescribed vicodin.

25. If paternity was established, [Father] would need to complete home based case management and therapy. [Father] has a history of instability. At the time of trial in this matter, [Father] was unemployed and lived in a one bedroom residence with [Mother's] sister and child.

26. [Father] worked at a restaurant for three weeks and has done roofing and yard work. He testified he was paid "under the table" in cash. If paid by check, child support for another child would be taken out, not leaving him with much.

27. [Father] agreed that he was very inconsistent in visiting the children. His visits were suspended by the C[H]INS Court on June 28, 2012.

28. In November of 2012, two months after the Permanency Hearing on September 20, 2012, [Father] looked into services with the help of his girlfriend.

29. On January 7, 2012, [Father] started participating in Fathers and Families, working on his G.E.D. and parenting. He has plans to take domestic violence classes, substance abuse classes and a welding course.

30. If his parental rights are not terminated, [Father] and his girlfriend plan on obtaining housing for the two children, [Father] and his girlfriend, and her three children.

31. There is a reasonable probability that the conditions that resulted in the removal and continued placement of the children out of the home will not be remedied by their alleged father. From September 2011 until January of 2013, [Father] did little in his C[H]INS case. He has failed to take the initial step of establishing paternity. If he establishes paternity, he would still not only have to successfully complete services originally referred but must also obtain and

5

maintain adequate income and appropriate, stable housing as well as overcome transportation issues.

32. Continuation of the parent-child relationship poses a threat to the children's well-being. Without successfully completing services, neither parent can provide a safe and stable environment for the children or meet their basic needs, let alone [Ro.C.'s] special needs. [Mother] has virtually abandoned the children, and [Father's] last minute participation is "too little too late" when considering that continuation of the parent-child relationship only poses a barrier to obtaining permanency for the children.

*Appellant's Appendix* at 18-19. Father now appeals.

On appeal, Father does not challenge the sufficiency of the evidence or the legal merits of the juvenile court's decision to terminate. Rather, Father's sole argument is that his appointed counsel's performance was so deficient that he is entitled to a new termination hearing. In *Baker v. Marion Cnty. Office of Family & Children*, 810 N.E.2d 1035, 1041 (Ind. 2004), our Supreme Court set forth the standard applicable to such claims as follows:

> Where parents whose rights were terminated upon trial claim on appeal that their lawyer underperformed, we deem the focus of the inquiry to be whether it appears that the parents received a fundamentally fair trial whose facts demonstrate an accurate determination. The question is not whether the lawyer might have objected to this or that, but whether the lawyer's overall performance was so defective that the appellate court cannot say with confidence that the conditions leading to the removal of the children from parental care are unlikely to be remedied and that termination is in the child's best interest.

(footnote omitted).

The sole basis asserted for Father's contention that his trial counsel underperformed is that counsel's "primary theory of the case does not find support under applicable Indiana law." *Appellant's Brief* at 6. Father asserts that trial counsel "repeated[ly] mention[ed] that [Father] was court-ordered to establish paternity in the CHINS action but did not do so[,]"

6

but that counsel "pointed to no authority, and there is none, that a parent can avoid TPR consequences by simply failing to establish [paternity]." *Id.* at 8. Father argues that counsel's alleged repeated references to Father's failure to establish paternity were harmful to Father.

As an initial matter, our review of the transcript does not reveal excessive references by Father's counsel to Father's failure to establish paternity. Moreover, to the extent that counsel did make reference to Father's failure to establish paternity, counsel's purpose in doing so was apparent. As the DCS explains, "Father's counsel was merely trying to point out that DCS could not use Father's failure to complete services against Father because the juvenile court in the CHINS proceeding only ordered Father to establish paternity in its Parental Participation order" and, further, counsel was "trying to impress upon the court the fact that Father participated in services despite not being ordered to do so." *Appellee's Brief* at 13. Although counsel's tactic of highlighting the fact that Father had not been ordered to participate in services because he had not established paternity may not be a conventional strategy, this is more a reflection of the bleak factual scenario with which counsel was presented than any failure on counsel's part.

In any event, aside from the conclusory assertion that "[i]t cannot be said with confidence that [Father] received a fair trial with a trial counsel whose theory of the case is not supported by the law", *Appellant's Brief* at 9, Father has made no attempt to explain how counsel's purportedly deficient performance rendered the trial unfair or undermines this court's confidence in the accuracy of the juvenile court's conclusions. In light of the

7

introduction of documents from the CHINS proceedings and testimony of other witnesses, it is clear that the juvenile court was already well aware that Father had not established paternity; it is not as if the court might have overlooked this very significant fact in the absence of counsel's reminders. Even if we believed that counsel's performance was somehow deficient (which we do not), the purported harm falls far below the threshold necessary to establish entitlement to a new TPR hearing.

Judgment affirmed.

BAKER, J., and VAIDIK, J., concur.